**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. 3512 FOR 2703(d) ORDER FOR ONE DOMAIN NAME SERVICED BY ENOM, LLC | ML No. <u>19-ml-819</u><br><br><u>Filed Under Seal</u> |

*Reference:*     *DOJ Ref. # CRM-182-58527; Subject Account: hltec-th.com*

**APPLICATION OF THE UNITED STATES
<u>FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)</u>**

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order, pursuant to 18 U.S.C. §§ 2703(d) and 3512(a), and the Agreement between the United States of America and the Republic of Poland on the Application of the Treaty between the United States of America and the Republic of Poland on Mutual Legal Assistance in Criminal Matters signed 10 July 1996, pursuant to Article 3(2) of the Agreement on Mutual Legal Assistance Between the United States of America and the European Union signed at Washington 25 June 2003, Pol.-U.S., June 9, 2006, S. TREATY DOC. NO. 109-13 (2006) (hereinafter, the "Agreement"), to execute a request from the Republic of Poland ("Poland").  The proposed Order would require Enom, LLC ("PROVIDER"), an electronic communication service and/or remote computing service provider located in Kirkland, Washington, to disclose certain records and other information pertaining to the PROVIDER account associated with the domain name hltec-th.com, as set forth in Part I of Attachment A to the proposed Order, within ten days of receipt of the Order.  The records and

other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

## LEGAL BACKGROUND AND JURISDICTION

1. PROVIDER is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require PROVIDER to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2. Pursuant to the applicable treaty, this Court has jurisdiction to issue the proposed Order. *See* Agreement Annex art. 5(1) (authorizing courts to issue orders necessary to execute the request). In addition, this Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. 18 U.S.C. § 2703(d). Specifically, the Court "is acting on a request for foreign assistance pursuant to [18 U.S.C.] section 3512." 18 U.S.C. § 2711(3)(A)(iii); *see also* 18 U.S.C. § 3512(a)(2)(B) (court may issue "a warrant or order for contents of stored wire or electronic communications or for records related thereto, as provided under section 2703"); 18 U.S.C. § 3512(c)(3) ("application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia").

3. Section 3512 provides:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.

18 U.S.C. § 3512(a)(1).  This application to execute Poland's request has been duly authorized by an appropriate official of the Department of Justice, through the Criminal Division, Office of International Affairs,[1] which has authorized execution of the request and has delegated the undersigned to file this application.  The undersigned has reviewed the request and has confirmed that it was submitted by authorities in Poland in connection with a criminal investigation and/or prosecution.

4. A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought, are relevant and material to an ongoing criminal investigation."  18 U.S.C. § 2703(d).  Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

**RELEVANT FACTS**

5. Authorities in Poland are investigating unknown suspect(s) for fraud offenses, which occurred in February and April 2016, in violation of the criminal law of Poland, specifically, Articles 267, 286, and 287 of the Polish Criminal Code.  A copy of the applicable laws is appended to this application.  The United States, through the Office of International Affairs, received a request from Poland to provide the requested records to assist in the criminal

---

[1] The Attorney General, through regulations and Department of Justice directives, has delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters.  *See* 28 C.F.R. §§ 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

investigation and/or prosecution. Under the Agreement, the United States is obligated to render assistance in response to the request.

6. According to authorities in Poland, during 2015 and 2016, a Polish company had a regular ongoing business relationship with a Thai company, where the Polish company would sell meat processing equipment to the Thai company. The Polish company conducted their business with the Thai company over e-mail. To communicate, the Polish company always used e-mail accounts ending with "@metalbud.com," and the Thai company always used e-mail accounts ending in "@hitec-th.com."

7. Between approximately February 5, 2016 and February 15, 2016, and then again in March 2016, the Thai company received various e-mails from an unknown suspect using e-mail accounts ending in "@rmetalbud.com,"[2] informing the Thai company that the Polish company had changed its bank account and requesting various payments to the new bank account. The Thai company did not notice the slight difference in the domain name of the e-mail address.

8. On February 8, 2016, the Polish company also received an e-mail from an unknown suspect, using e-mail address **alex@hltec-th.com**, an e-mail address very similar to the e-mail address alex@hitec-th.com, used by the Thai company's Sales Manager. In this e-mail message, the suspect, pretending to be the Sales Manager of the Thai company, stated that he was arranging to make the payment of EUR 85,100 (approximately USD 95,455). The Polish company did not notice the slight difference in the domain name, and replied to e-mail account

---

[2] In August 2017, pursuant to a request from Poland, the United States filed an application for an order under 18 U.S.C. §§ 2703(d) and 3512(a), requiring VistaPrint USA, Inc. (VistaPrint) to produce non-content records related to the domain @rmetalbud.com. *See In re Application of the United States of America for an Order Pursuant to 18 U.S.C. § 2703(d)*, Case No. 1:17-mc-01912 GMH (August 7, 2017). In response to the Court order, VistaPrint produced limited records.

**alex@hltec-th.com** on the same day. The reply e-mail message copied additional e-mail addresses containing the **hltec-th.com** domain, such as **account@hltec-th.com** and **sales@hltec-th.com**. On February 12, 2016, the Polish company received another e-mail from **alex@hltec-th.com**, stating that the Thai company had sent payment instructions to the bank for payment of the invoice.

9. On or about February 15, 2016, the Thai company made a payment in the amount of EUR 85,100 (approximately USD 95,455) to the bank account provided by the unknown suspect, believing it was making a payment to the Polish company. The Thai company attempted to make additional transfers of EUR 13,200 (approximately USD 15,134) and EUR 10,000 (approximately USD 11,465) on two occasions in March 2016 to the bank provided by the unknown suspect. However, the last two transfers were not credited by the bank and returned to the Thai company. The Polish company never received the funds sent on or about February 15, 2016.

10. On April 4, 2016, the Polish company received another e-mail message from e-mail account **patcharaporn.m@hltec-th.com**, an e-mail very similar to the e-mail account for another one of the Thai company's employees. In this e-mail message, the unknown suspect requested that the Polish company send a copy of an invoice. At this point, the Polish company had discovered the fraud and did not respond to the request.

11. Later investigation by Polish authorities revealed that the bank account provided by the unknown suspect had been opened by a Swedish citizen on behalf of a company named La Battride, a company that never had any business relationship with either the Polish company or the Thai company.

12. Open sources indicate that domain **hltec-th.com** was registered on February 8, 2016, the same day the suspect sent the first e-mail to the Thai company. Polish authorities believe that the suspect created and used domain **hltec-th.com** for the sole purpose of imitating a legitimate business company and defrauding its partners.

13. In order to further the investigation and identify the unknown suspect(s), Polish authorities are seeking non-content information from PROVIDER for the time period from February 8, 2016, to and including May 4, 2016, in order to locate and identify the user(s) of the domain **hltec-th.com**.

### REQUEST FOR ORDER

14. The facts set forth above show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help authorities in Poland identify and locate the individual(s) who are responsible for the criminal activity under investigation, and to determine the nature and scope of that criminal activity. Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of Attachment A to the proposed Order within ten days of receipt of the Order.

15. The United States further requests that the Order direct PROVIDER not to notify any person, including the subscriber or customer of each account listed in Part I of Attachment A, of the existence of the application of the United States or the Order for two years from the date of the Court's Order. *See* 18 U.S.C. § 2705(b); 18 U.S.C. § 3512(a). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of

the existence of the warrant, subpoena, or court order." *See* 18 U.S.C. § 2705(b).[3] In addition, this Court has the authority under 18 U.S.C. § 3512(a) to issue "such orders as may be necessary to execute a [foreign] request," including an order to protect the confidentiality of the foreign request here.[4] 18 U.S.C. § 3512(a)(1); *see* Agreement Annex art. 5(5) (obligating the United States to protect information when confidentiality is requested).

16.     In this case, the proposed Order seeks information relevant to establishing the illegal activity under investigation and identifying the individual(s) responsible. Accordingly, disclosure may reveal the existence, scope, and direction of Poland's ongoing and confidential investigation. Once alerted to this investigation, the potential target(s) could be immediately prompted to destroy or conceal incriminating evidence, alter their operational tactics to avoid future detection, and otherwise take steps to undermine the investigation and avoid future prosecution. In particular, given that they are known to use electronic communication and remote computing services, the potential target(s) could quickly and easily destroy or encrypt digital evidence relating to their criminal activity. Notification could also result in the target(s) traveling to countries from which they cannot be extradited.

---

[3] The government relies on § 2705(b) to seek a preclusion-of-notice order because the government is requesting only non-content information pursuant to § 2703(d), an action which is authorized by § 2703(c). *See* 18 U.S.C. § 2703(c)(1)(B) ("governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when [it] . . . obtains a court order for such disclosure under subsection (d) of this section"). Under § 2703(c), the government has no obligation to notify the subscriber. *See* 18 U.S.C. § 2703(c)(3) ("governmental entity receiving records or information under this section is not required to provide notice to a subscriber or customer").

[4] When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would insure reciprocity in response to U.S. requests for assistance in its criminal investigations. *See, e.g.*, 155 CONG. REC. H10,093 (2009) (statement of Rep. Schiff). Section 3512, which codified past practice in relation to the execution of foreign requests for evidence, naturally encompasses the longstanding practice of maintaining the confidentiality of the foreign investigation, where possible. *See, e.g.*, *In re Letter of Request from the Government of France*, 139 F.R.D. 588, 592 (S.D.N.Y. 1991) (secrecy in executing foreign request is "essential to protect the French Court's criminal investigation").

17. Therefore, based on the foregoing, there are reasonable grounds to believe that notification of the existence of this Order would result in flight from prosecution, destruction of or tampering with evidence, or other serious jeopardy to this investigation. *See* 18 U.S.C. § 2705(b)(2)-(3), (5).

18. In addition, the two-year time period for preclusion of notice is reasonable. As explained above, these documents discuss an ongoing criminal investigation pursuant to foreign law in the requesting country. Foreign investigations are often lengthy, and the United States does not have ready access to the status of such investigations. Additionally, during the two-year time period, the United States will need to serve the production Order on PROVIDER, obtain PROVIDER's responsive documents, resolve any issues or questions regarding the production, and send the documents to the Central Authority for mutual legal assistance requests in Poland. Poland's Central Authority then will have to provide the documents to the investigating judge, prosecutor, and/or investigator assigned to the particular matter, who will need time to review the information provided and pursue any investigative leads, prior to disclosure of the specific assistance sought by Poland's authorities to the account holder(s).[5]

19. Accordingly, this Court should command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the proposed Order for a period of two years (commencing on the date of the Order), unless the period of nondisclosure is later modified by the Court.

20. In this matter, the United States also requests that the instant Application and the Order be filed under seal. The Court has the inherent power to seal court filings when appropriate, including the proposed Order. *United States v. Hubbard*, 650 F.2d 293, 315-16

---

[5] With many foreign counterparts, the production also may need to be translated into the recipient's language.

(D.C. Cir. 1980) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).  More particularly, the Court may seal the Application and Order to prevent serious jeopardy to an ongoing criminal investigation when such jeopardy creates a compelling governmental interest in confidentiality.  *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991).  In addition, the Court is authorized to issue orders necessary for the execution of a foreign request, including an order to seal the instant Application and Order, to protect the confidentiality of the foreign criminal investigation.  *See* Agreement Annex art. 5(5); 18 U.S.C. § 3512(a); *see also In re Letter of Request from the Government of France*, 139 F.R.D. at 592.  For these reasons, the United States has a compelling interest in confidentiality to justify sealing the Application and Order.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199

By: *[signature]*

Ruxandra Barbulescu
Trial Attorney
NY Bar Number 2988228
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W., Suite 800
Washington, D.C.  20530
(202) 305-4136 telephone
(202) 514-0080 facsimile
Ruxandra.Barbulescu@usdoj.gov

## Relevant Provisions of Polish Criminal Code

**Article 267 (Mail & Wire Fraud)**

Any person who without being authorized to do so, acquires information not meant for him/her, by opening a sealed letter, or connecting to a wire that transmits information or by breaking electronic magnetic, or other special protection of such information, will be liable to fine, non-custodial sentence, or up to 2 years imprisonment.

**Article 286, Paragraph 1 (Fraud)**

Any person who, in order to gain financial benefit, commits fraud causing another person to disadvantageously administer his/her property or third party property, by misleading such person, or taking advantage of his/her mistake, or inability to properly understand the action undertaken, will be liable to imprisonment of 6 months to 8 years.

**Article 287, Paragraph 1 (Internet Fraud)**

Any person who, in order to gain financial benefit or inflict damage on another, without authorization influences automatic processing, storing or transmission of information, or alters on, deletes from, or introduces new content to a computer data carrier, will be subject to imprisonment for a period of 3 months to 5 years.